UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| MADDEN GULF COAST, LLC, *Plaintiff* | * * * | CIVIL ACTION NO. 24-2233 |
| VERSUS | * * | SECTION: "I" (1) |
| HILARK INDUSTRIES, INC., ET AL., *Defendants* | * * * * | JUDGE LANCE M. AFRICK MAGISTRATE JUDGE JANIS VAN MEERVELD |

## ORDER AND REASONS

Before the Court is the Motion for Leave to File Supplemental and Amended Complaint filed by Plaintiff Madden Gulf Coast, LLC ("Madden"). Rec. Doc. 43. For the reasons set forth herein, the motion is GRANTED.

## Background

This dispute concerns allegedly defective steel dump bodies incorporated into dump trucks leased by Madden, which is a limited liability company that focuses on heavy highway asphalt road construction. Rec. Doc. 1 at ¶ 1. In or around February or March 2023, Madden received six dump trucks that it leased from a third party. These dump trucks were outfitted with dump bodies manufactured and sold by Defendants Hilark Industries, Inc. and Hilbilt Sales Corp. *Id.* at ¶¶ 17-29.

On September 12, 2023, one of the trucks outfitted with the allegedly defective dump body turned over while offloading asphalt at Madden's Westwego plant. *Id.* at ¶ 31. The truck had raised the bed to dump its load, and the corner joint welds connecting the forward plate and the side wall of the doghouse broke. *Id.* at ¶ 32. On September 17, 2023, another truck with the same dump body turned over while dumping milling material at the Westwego plant. *Id.* at ¶ 34. The hydraulic cylinder was raising the dump body to dump its load and the dump body broke, causing

1

the dump body to turn to the driver's side of the truck and twisting the truck's frame. *Id.* at ¶ 35. The two trucks are inoperable as a result of the turnovers, and Madden claims they are a total loss. *Id.* at ¶¶ 42-43.

Because two rollover incidents happened in less than a week, Madden took the four other dump trucks with the same dump bodies out of service. *Id.* at ¶ 40. Thereafter, from December 2023 to February 2024, the HilBilt Defendants (as defined below) attempted to inspect and fix the dump bodies. *Id.* at ¶¶ 52-55. In or around late January or February 2024, however, Defendant Grayling Hill notified Madden that they would not fix the trucks and that Madden needed to retrieve the trucks. *Id.* at ¶¶ 55-57. Madden retrieved the trucks and began its own investigation. *Id.* at ¶ 58. Based on its investigation, Madden contends that the rollover incidents were caused by engineering and/or design changes that the HilBilt Defendants made to the dump bodies on the trucks, as well as defective, inadequate, and/or missing welds on the dump bodies in question. *Id.* at ¶ 77. Madden indicates that once it identified the issues with the dump bodies, it modified and/or retrofitted the remaining four trucks and placed them back in service after approximately 11 months. *Id.* at ¶¶ 58-59, 79.

On September 11, 2024, Madden filed suit against Defendants asserting claims under the Louisiana Products Liability Act, for negligence, for breach of warranty for fitness of use, for breach of express warranty, and for redhibition. Defendants can be grouped into two categories: (1) the "HilBilt Defendants," which include HilArk Industries, Inc., HilBilt Sales Corp.-Arkansas, Hill G3 Industries, Inc. (the original designer(s), manufacturer(s), and/or seller(s) of the dump-bodies), and Grayling Hill (who Madden alleges is the owner, operator, and manager of the "HilBilt" corporate entities in the original complaint); and (2) the "Lufkin Defendants," which include Hilark-Lufkin Heavy Haul Trucks & Trailers, LLC and Hilbilt-Lufkin Distribution, LLC

(companies who purchased the HilBilt corporate entities around the same time of the incidents). Madden seeks damages related to the destruction and loss of the two dump trucks, the lease payments for the four dump trucks taken out of service for approximately 11 months, the time and expense Madden spent identifying and correcting the defects, the cost expended in defending a worker's compensation claim of an injured driver in the September 12, 2023 rollover, loss of business opportunities, inconvenience and lost time related to the defective dump bodies, and attorney's fees and costs. *Id.* at ¶ 79.

After Madden filed suit, the Court entered its scheduling order on December 3, 2024. Pursuant to the scheduling order, amendments to pleadings were to be filed no later than January 2, 2025, and trial is set to begin on June 2, 2024. Rec. Doc. 13. The Court set the deadline for all motions, including motions for summary judgment, to have an April 9, 2025 submission date. *Id.*

On March 3, 2025, the Lufkin Defendants filed a motion for summary judgment on all claims asserted by Madden, contending that: (1) the Louisiana Products Liability Act ("LPLA") subsumed Madden's breach of implied warranty and negligence claims; (2) the Lufkin Defendants could not be liable for breach of express warranty and redhibition because they merely purchased certain assets from the HilBilt Defendants and did not expressly assume the HilBilt Defendants' liabilities; and (3) the Lufkin Defendants could not be liable under an assumed limited manufacturer warranty because: (a) they did not assume pre-asset purchase liabilities of the seller, (b) Madden is merely a lessee and does not fall within the manufacturer's warranty that only extends to the "original owner," and (c) the assumed warranty is capped at $158,000, which has since been depleted to $90,000, and the warranty only covers replacement parts, not consequential damages. *See* Rec. Doc. 41 at p. 2.

One week later, on March 10, 2025, Madden filed a motion for leave to file an amended and supplemental complaint. Rec. Doc. 43. Madden indicates that the new complaint:

1. Supplements and/or amends the complaint to conform to the evidence, particularly the 100-page Asset Purchase Agreement between the HilBilt Defendants and the Lufkin Defendants (received on December 16, 2024), Defendants' discovery responses, and the Defendants' depositions (taken on February 26 and 27, 2025);

2. "Cleans up" and "clarifies" the claims and allegations against all defendants, specifically including Plaintiff's negligence, warranty, and product liability claims against the Lufkin Defendants;

3. Asserts personal liability claims against Grayling V. Hill based upon his alleged fraudulent conduct and his personal liability for, among other things, making engineering and/or design changes to the HilBilt dump bodies in question despite not having the proper training to do so;

4. Adds Travelers Property Casualty Company of America ("Travelers") as a defendant and asserts a direct action for insurance coverage against it because Travelers is defending the HilBilt Defendants subject to a reservation of rights, and discovery has exposed potential insolvency and corporate dissolution of the insureds; and

5. Asserts independent causes of action against Travelers for bad faith insurance practices and negligence.

Rec. Doc. 43 at pp. 1-2. The Lufkin Defendants oppose, and the HilBilt Defendants joined the Lufkin Defendants' opposition. Rec. Docs. 59 and 81.

Subsequently, on March 25-26, both Madden and the HilBilt Defendants also filed motions for partial summary judgment. Madden seeks partial summary judgment on the issues of liability

and causation of damages (which issues all Defendants contest) and on the issue of manufacturer status for Defendants HilBilt Sales Corp. Arkansas and Hilark Industries, Inc. (which issue these Defendants do not contest). Rec. Docs. 65 and 80. The HilBilt Defendants seek summary judgment dismissing all of Madden's non-LPLA claims and all claims asserted against Grayling V. Hill in his individual capacity, which the Lufkin Defendants joined. Rec. Docs. 67 and 100. Defendants further seek an order dismissing Madden's damage claims for property damage and workers' compensation payment. Rec. Doc. 67.

<u>The Motion for Leave to File an Amended and Supplemental Complaint</u>

In Madden's motion for leave to file an amended and supplemental complaint, Madden emphasizes that its recent discovery of the newly asserted facts and claims explains and justifies its delay in filing. Madden indicates that it first learned of the "origin of the defective design of the dump bodies" and of the potential new claims it could bring against Grayling Hill individually during the Wednesday, February 26, 2025 deposition of Defendant Grayling Hill, wherein Mr. Hill testified that he and an employee of Defendant Hilark Industries "made the engineering and/or design changes to the arms where the hydraulic cylinder is mounted to the Dump Bodies," despite "neither . . . having any engineering education and/or training." Rec. Doc. 43-2 at pp. 4, 8-9. Madden indicates that Mr. Hill has an accounting degree and a master's degree in business administration, while the other employee has a high school education. *Id.* at p. 4. Madden next indicates that at some point after filing its original complaint, it learned that the Lufkin Defendants entered into an Asset Purchase Agreement ("APA") with the HilBilt Defendants on September 11, 2023—the day before the first rollover accident. *Id.* Yet, it did not receive a copy of the APA until December 16, 2024, wherein it first learned that the Lufkin Defendants agreed to assume certain warranty obligations that arose prior to the Closing

Date of the APA. *Id.* at p. 5. Lastly, Madden points out that it only became aware of its claims against Travelers through the Lufkin Defendants' discovery responses, received February 17-18, 2025, wherein Madden learned that Travelers agreed to defend the HilBilt Defendants subject to a reservation of rights, and Grayling Hill's February 26 deposition, wherein Mr. Hill testified that the HilBilt Defendants have sold and/or conveyed all or substantially all of their assets to the Lufkin Defendants and that he intends to dissolve both companies by May 3, 2025. *Id.* at pp. 7-8. Madden argues that if it is not permitted to add Travelers as a defendant and it succeeds against potentially insolvent defendants, it may then be forced to bring a subsequent action against Travelers, which it contends "would be a waste of judicial resources, time and money." *Id.* at p. 8. Madden argues that Travelers has "been involved in these claims since October 2023, so it should be able to get up to speed quickly."

The Lufkin Defendants oppose, arguing that Madden offers no explanation for its failure to timely file, there is no important reason to permit amendment, they will be prejudiced, and the proposed amended complaint is futile. *See generally* Rec. Doc. 59. Specifically, the Lufkin Defendants claim that Madden's complaint of receiving documents late and/or not at all is not sufficient reason for delay. In the Lufkin Defendants' view, Madden should have served discovery on a more expedited basis: Madden filed the complaint on September 30 and the Lufkin Defendants answered on November 14, however, Madden waited until January 8, 2025—after the January 2, 2025 pleading amendment deadline—to serve its initial discovery to the Lufkin Defendants. *Id.* at pp. 8-9. The Lufkin Defendants further argue that Madden's attempt to "clarify" its factual allegations and claims against the Lufkin Defendants is not important, as Madden "will be able to use at trial any competent evidence supporting these claims, regardless of any Complaint conformity." *Id.* at p. 9. As to the direct action claims

6

against Travelers, the Lufkin Defendants contend that there is no need to bring the insruer into the case at this time, as Madden can pursue them subsequently should the HilBilt Defendants default on any judgment against them. And in any event, Travelers' reservation of rights is only limited to a potential exclusion for property damage, which, according to the Lufkin Defendants, would only pertain to "$60,380 of Madden's total claimed damages." *Id.* at p. 10. The Lufkin Defendants argue that they will be significantly prejudiced by Madden's attempt to add new fraud claims, claims for vicarious liability, and claims of bad-faith insurance handling, because these new claims are after the close of discovery and after the time for filing amended pleadings has passed.

Finally, the Lufkin Defendants contend that certain claims against the Lufkin Defendants in the amended complaint are futile for the same reasons they already addressed in their pending motion for summary judgment. They heavily emphasize that Madden considered dismissing its LPLA, breach of warranty of fitness, redhibition, and negligence claims against the Lufkin Defendants eleven days before Madden sought leave to amend, but the amended complaint continues to assert these same claims against them. As to the new claims asserted in the amended complaint, the Lufkin Defendants argue that the "apparent" manufacturer claim against them fails because the relevant inquiry is evaluated at the time of purchase, which was two years before the existence of the Lufkin Defendants, and the Lufkin Defendants had no interaction with Madden at any point of the sale in this case. *Id.* at pp. 14-18. In the end, the Lufkin Defendants implore: "What Madden should now do, is to withdraw its Motion for Leave, step up and dismiss with prejudice all of the claims against the Lufkin Defendants it was prepared to dismiss without prejudice, and allow the Lufkin Defendants summary judgment as to the sole remaining warranty claim to be decided." *Id.* at p. 18.

In reply, Madden argues that, "[t]he discovery issues in this case alone are good cause for allowing the amendment." Rec. Doc. 86 at p. 2. Madden argues that despite Defendants' attempts to "stonewall" Madden in this case, Madden acted quickly to file the instant motion to amend "a mere two weeks" after it took Grayling Hill's deposition, which "reveal[ed] many of the facts that form the basis of [its] new claims for fraud, direct action, and insurance bad faith." Madden provides that, "[c]ourts in the Fifth Circuit have held that information learned during discovery is good cause to amend under Rule 16." *Id.* at p. 5 (citing *Rivera v. Robinson*, No. 18-14005, 2019 WL 4024939, at *1 (E.D. La. Aug. 27, 2019)). As to importance of amendment, Madden argues that Traveler's reservation of rights could potentially pertain to more than $60,000, and, regardless, the Louisiana legislature has clearly indicated that circumstances such as this warrant having an insurer in the same case to "deal with these issues all at once." *Id.* at p. 8.

Law and Analysis

I.     *Legal Standard*

As the Lufkin Defendants properly point out, Federal Rule of Civil Procedure 16 governs the amendment of pleadings after a scheduling order deadline has expired, as is the case here. *S&W Enters., L.L.C. v. SouthTrust Bank of Alabama, NA*, 315 F.3d 533, 536 (5th Cir. 2003) ("We take this opportunity to make clear that Rule 16(b) governs amendment of pleadings after a scheduling order deadline has expired."); *Fahim v. Marriott Hotel Servs., Inc.*, 551 F.3d 2344, 348 (5th Cir. 2008). Pursuant to Rule 16, when the court ordered deadline for amending pleadings has passed, pleadings may be amended only upon a showing of good cause and with the judge's consent. *Singh v. RiverSource Life Ins. Co.*, No. 22-50036, 2022 WL 17604514, at *4 (5th Cir. Dec. 13, 2022) (citing FED. R. CIV. PROC. 16(b)(4)). "Only upon the movant's demonstration of good cause to

modify the scheduling order will the more liberal standard of Rule 15(a) apply to the district court's decision to grant or deny leave." *S&W Enters.*, 315 F.3d at 536.

When determining whether the movant has shown good cause, the Court considers: "(1) the explanation for the failure to [timely move for leave to amend]; (2) the importance of the [amendment]; (3) potential prejudice in allowing the [amendment]; and (4) the availability of a continuance to cure such prejudice." *Id.* (alterations in original) (quoting *Reliance Ins. Co. v. Louisiana Land & Expl. Co.*, 110 F.3d 253, 257 (5th Cir. 1997)). "Newly discovered information acquired through discovery . . . constitute[s] good cause for an untimely leave to amend under Rule 16." *MacNair v. Chubb European Grp. SE*, No. 23-761, 2024 WL 2848008, at *2 (E.D. La. June 5, 2024) (citing *Rivera v. Robinson*, No. 18-14005, 2019 WL 4024939, at *2 (E.D. La. Aug. 27, 2019) (citing *Bayou Liberty Prop., LLC v. Best Buy Stores, LP*, 2015 WL 1415704, at *2 (E.D. La. Mar. 27, 2015)); *EPL Oil & Gas, Inc. v. Tana Expl. Co., LLC*, No. 18-00757, 2018 WL 4489287, at *3 (E.D. La. Sept. 17, 2018) (finding good cause and valid explanation existed where party only learned of facts supporting the claims after the amendment deadline)).

If the Court finds that good cause exists pursuant to Rule 16, it may then proceed to analyze whether leave is appropriate under Rule 15. Under Rule 15, "[t]he court should freely give leave when justice so requires." FED. R. CIV. P. 15(a)(2). The court may consider numerous factors when deciding whether to grant a motion for leave to amend under Rule 15, including "undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of the amendment." *Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 566 (5th Cir. 2003).

II.   *Analysis*

Because the time for amending pleadings has passed, the Court considers whether Madden has established good cause for the out of time amendment under Federal Rule of Civil Procedure 16, and then, only if amendment is proper under Rule 16, the Court considers whether amendment should be permitted under Federal Rule of Civil Procedure 15.

A.   Rule 16 Analysis

The Court first considers Madden's explanation for its failure to timely file. Madden explains that it did not receive the new, relevant information asserted in the amended complaint until December 2024, via the production of the APA, and February 2025, via Defendants' discovery responses and depositions. Both in its reply brief and at oral argument, Madden clarified, however, that the mere receipt of the APA by itself was not the impetus to amend. Instead, the depositions on February 26 elucidated Madden's new claims, as the testimony shed "more light and context" on Grayling Hill's role with both the HilBilt and Lufkin entities, Grayling Hill's involvement in the design of the dump bodies, Traveler's reservation of rights, and the impending dissolution of the HilBilt Defendants. Madden did not receive this new information until less than two weeks before it moved to amend and *after* the amendment deadline had already passed. And while Madden certainly could have served its discovery responses earlier than January 8, 2025, the Court notes that the Lufkin Defendants did not respond to the Complaint until November 14, 2024 and did not provide their initial disclosures until December 16, 2024. Throughout this litigation, the parties have been before the undersigned multiple times for assistance in resolving discovery disputes. Although Madden's discovery has often been expansive and lengthy (hence Madden refining its first set of discovery to all Defendants), Madden's counsel appears to have been diligent in attempting to garner facts necessary to support the new allegations in the amended

10

complaint. Therefore, the Court finds that Madden offers a sufficient explanation for its failure to timely move for leave to amend.

The Court next considers the importance of the amendment. The Lufkin Defendants indicate that in the event the HilBilt Defendants are insolvent, Madden will be able to recover from Travelers regardless of whether Travelers is added now. But the Lufkin Defendants fail to acknowledge that judicial economy would be served in including Travelers as a party now, a fact that is reflected in the Louisiana Legislature permitting a direct action against an insurer if an entity is insolvent. LA. R.S. 22:1269. *See* Rec. Doc. 86 ("The Louisiana legislature has authorized the ability to bring the insurer in to deal with these issues all at once, so that Madden does not need to live on a prayer and hope it can get to Travelers if it gets a judgment against what now appears to be shell companies."). Moreover, to the extent that Madden is adding new claims against Grayling Hill in his individual capacity, those claims are clearly related to the other claims in this lawsuit and should be resolved at the same time. The Lufkin Defendants fail to address the importance of the new individual claims against Mr. Hill in their opposition, and the HilBilt Defendants did not file their own opposition to address these claims. The Court therefore finds that the Defendants' silence on the issue implies that these additional claims are in fact important. Lastly, as relates to the need for Madden to "clarify" and "conform" the Complaint to what evidence has been developed in discovery, particularly with respect to the claims against the Lufkin Defendants and those related to the APA, the Court finds that the information will assist in clarifying the claims against both the Lufkin Defendants and the HilBilt Defendants, as the timing and circumstances surrounding the execution of the APA are crucial in resolving the issue of the "void of liability" created by the APA. Thus, the Court finds that the proposed amendment is important.

The next two factors are prejudice and whether a continuance would resolve any prejudice. Here, the purported prejudice is the continuance itself and the fact that the Lufkin Defendants *believe* that their current motion for summary judgment should resolve all claims against it. While the HilBilt Defendants did not file their own opposition to the motion to amend and merely joined the Lufkin Defendants' opposition, the HilBilt Defendants also indicated at oral argument that they too would likely need to re-file motions for summary judgment, particularly as relates to the additional claims against Grayling Hill individually. The parties also indicate that additional limited discovery related to the new claims against Travelers and Grayling Hill may have to occur.

Trial is scheduled for June 2, 2025, and the discovery deadline has closed. Although the Court acknowledges that the Defendants may be prejudiced with this late amendment, particularly in light of the already filed motions for summary judgment and the new claims against the parties, the Court also recognizes that, if the parties have good cause to request an extension, there is nothing preventing the parties from seeking one from the district judge. Moreover, while the Fifth Circuit instructs courts to "more carefully scrutinize a party's attempt to raise new theories of recovery by amendment when the opposing party has filed a motion for summary judgment," *Parish v. Frazier*, 195 F.3d 761, 764 (5th Cir. 1999) (citations omitted), the "Fifth Circuit has repeatedly stated that 'neither a motion to dismiss nor a motion for summary judgment extinguishes a plaintiff's right to amend a complaint.'" *Arceneaux v. State Farm Fire & Cas. Co.*, No. 06-3855, 2008 WL 11352619, at *1 (E.D. La. Dec. 10, 2008) (quoting *Zaidi v. Ehrlich*, 732 F.2d 1218, 1220 (5th Cir. 1984)). The mere fact that dispositive motions may have to be re-filed is not sufficient prejudice to prevent amendment here.

On balance, the Court finds that Madden has established good cause under Rule 16.

B. <u>Rule 15 Analysis</u>

Having determined that Madden has demonstrated good cause to amend its complaint pursuant to Rule 16, the Court must next determine whether the requested amendment satisfies Federal Rule of Civil Procedure 15(a), which provides that, "[t]he court should freely give leave [to amend] when justice so requires." FED. R. CIV. P. 15(a)(3). The Court finds that none of the Rule 15 factors of undue delay, bad faith or dilatory motive, repeated failures to cure deficiencies, or undue prejudice weigh against allowing the amendment.

As to the last factor, futility, the Court declines to assess the merits of the parties' futility arguments in this motion to amend. Because the issues addressed in the parties' futility arguments are largely the same as those pending before Judge Africk in the parties' summary judgment briefings, those substantive issues are best dealt with by Judge Africk in the context of those pleadings. *See* Rec. Doc. 59 (the Lufkin Defendants indicating that all claims in the amended complaint besides Madden's "apparent" manufacturer claim against them "are briefed and pending summary judgment consideration."); *see also Tran v. Jefferson Parish Sch. Bd.*, No. 24-2777, 2025 WL 903140 (E.D. La. Mar. 25, 2025) (declining to conduct futility analysis in the context of a Rule 15 motion to amend because, "[t]his Court lacks authority to address substantive issues that have not been referred, however, and those issues are best addressed in the context of resolving the pending substantive motions to dismiss and/or any subsequently-filed motions addressing substantive issues."). And in any event, while it may be true that the Lufkin Defendants may have arguments against the claims asserted against them via dispositive motions, it is not clear on the record that the newly asserted claims against Defendant Grayling Hill or the newly added Defendant Travelers would be futile. *See Gibson v. Ocean Shipholdings, Inc.*, No. 15-0662, 2015 WL 4645663, at *3 (E.D. La. Aug. 4, 2015) ("While it is true that there is an early-filed motion

for summary judgment pending on the claims against the original Defendant, OSI, it is not altogether clear on the present record that no claim could be stated against either of the proposed new Defendants. . . . With no discovery having been conducted and no Rule 12(b)(6) motion having been filed, the record is simply too bare at this stage for the Court to conclude that the proposed amendment would be futile.").

The Court therefore finds amendment proper under Rule 15.

## Conclusion

For the foregoing reasons, Madden's Motion for Leave to File Supplemental and Amended Complaint (Rec. Doc. 43) is GRANTED; Plaintiff Madden Gulf Coast, LLC's Supplemental and Amended Complaint shall be entered into the record.

New Orleans, Louisiana, this 14th day of April, 2025.

_____
Janis van Meerveld
United States Magistrate Judge