UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| MADDEN GULF COAST, LLC, *Plaintiff* | * * * | CIVIL ACTION NO. 24-2233 |
| VERSUS | * * | SECTION: "I" (1) |
| HILARK INDUSTRIES, INC., ET AL., *Defendants* | * * * * | JUDGE LANCE M. AFRICK MAGISTRATE JUDGE JANIS VAN MEERVELD |

**ORDER AND REASONS**

Before the Court is the Motion to Quash for a Protective Order (Rec. Doc. 62) filed by Defendants Hilark Industries, Inc., HilBilt Sales Corp., Hill G3 Industries, Inc., and Grayling V. Hill ("HilBilt Defendants"). Plaintiff Madden Gulf Coast LLC ("Madden") filed an opposition (Rec. Doc. 77), and the HilBilt Defendants replied (Rec. Doc. 89). For the reasons set forth herein, the HilBilt Defendants' Motion to Quash for a Protective order is GRANTED. Madden Gulf Coast LLC is not entitled to any discovery from the HilBilt Defendants' non-testifying expert, James I. Middleton, Jr.

Background

This dispute concerns allegedly defective dump trucks leased by Madden, which is a limited liability company that focuses on heavy highway asphalt road construction. Rec. Doc. 1 at ¶ 1. In or around February or March 2023, Madden received six dump trucks that it leased from a third party. These dump trucks were outfitted with dump bodies manufactured and sold by Defendants Hilark Industries, Inc. and Hilbilt Sales Corp. at ¶¶ 17-29.

1

On September 12, 2023, one of the trucks leased by Madden turned over while offloading asphalt at Madden's Westwego plant. *Id.* at ¶ 31. The truck had raised the bed to dump its load, and the corner joint welds connecting the forward plate and the side wall of the doghouse broke. *Id.* at ¶ 32. On September 17, 2023, another Quad Truck turned over while dumping milling material at the Westwego plant. *Id.* at ¶ 34. The hydraulic cylinder was raising the dump body to dump its load and the dump body broke, causing the dump body to turn to the driver's side of the truck and twisting the truck's frame. *Id.* at ¶ 35. The two trucks are inoperable as a result of the turnovers, and Madden claims they are a total loss. *Id.* at ¶¶ 42-43. While the HilBilt Defendants had possession of the allegedly defective trucks for a short period of time in or around December 2023 to February 2024, Madden has retained possession of the trucks at all other times. *Id.* at ¶¶ 52-59.

On September 11, 2024, Madden filed suit against Defendants asserting claims under the Louisiana Products Liability Act, for negligence, for breach of warranty for fitness of use, for breach of express warranty, and for redhibition. Defendants can be grouped into three categories: (1) the "HilBilt Entities," which include HilArk Industries, Inc. (the original designer and manufacture of the dump-bodies) and HilBilt Sales Corp. (the original seller of the dump-bodies); (2) the "Lufkin Entities," which include Hilark-Lufkin Heavy Haul Trucks & Trailers, LLC and Defendant Hilbilt-Lufkin Distribution, LLC (companies who purchased the HilBilt Entities around the same time of the incidents); and (3) Grayling Hill, who is/was the owner and President of the "HilBilt Entities"; is the current President of the "Lufkin Entities"; and is a party, both individually and on behalf of the sellers, to the asset purchase agreement entered into between the Sellers and the Lufkin Entities.

Trial in this matter is set to begin on June 2, 2024. Rec. Doc. 13. The discovery deadline was March 21, 2025. Rec. Doc. 35. To date, the undersigned has conducted multiple conferences between the parties to resolve several discovery issues that have arisen. On the day before the discovery deadline, yet another discovery dispute arose.

This time, Madden seeks to obtain documents and "information" from the HilBilt Defendants' (now) non-testifying expert witness, James I. Middleton, Jr., who has conducted multiple inspections of the allegedly defective dump bodies and who the HilBilt Defendants previously identified as a defense expert. Rec. Doc. 77 at p. 5; Rec. Doc. 39 at p. 4.

Madden first issued a notice of deposition to Mr. Middleton on March 13, 2025. Rec. Doc. 62-3. The following day, on March 14, the HilBilt Defendants informed Madden's counsel that Mr. Middleton would be a non-testifying expert and would not issue a report in the matter. Rec. Doc. 62-1 at p. 2. Despite this, Madden's counsel unilaterally issued a Rule 45 subpoena to the non-testifying expert on March 17, 2025,[1] commanding Mr. Middleton to appear for a deposition on March 21 via Zoom and to produce several documents related to the expert's files on the case. Rec. Doc. 62-5. Madden's counsel indicated that, "[b]ecause Jim Middleton did not issue a report in this action, Madden is converting the deposition scheduled for Friday morning, 3/21/25 to a Zoom records deposition so Madden can obtain the Photographs Middleton took and other information that should have already been produced. . . ." Rec. Doc. 62-6. The HilBilt Defendants advised Madden of their objection to the depositions and alerted Madden that the expert would not be available on March 21, 2025. Rec. Doc. 62-1 at p. 3. Madden responded that it intended to proceed with the records deposition and directed Defendants to "file a Motion to Quash." *Id.*

---

[1] Although the subpoena is dated March 17, 2025, it appears Madden's counsel did not send the notice to the HilBilt Defendants until 10:03 p.m. on March 18, 2025. *See* Rec. Doc. 62-6. Although not necessary for this Court's holding, the Court notes that neither date provided a reasonable timeframe before the deposition date of March 21, 2025.

3

The HilBilt Defendants now seek a protective order that would quash the subpoena and deposition requests issued to Mr. Middleton, as well as any future requests and/or attempts by Madden to depose or obtain documents or information from Mr. Middleton. In short, the HilBilt Defendants argue that Madden has not demonstrated "exceptional circumstances" warranting disclosure of their non-testifying expert's materials. Rec. Docs. 62 and 89. On the other hand, Madden contends that it is entitled to this information because Mr. Middleton was retained by Travelers in connection with a previous personal injury product liability claim by the driver injured in the first September 12, 2023 rollover accident, it has newly asserted bad faith claims against Travelers, and the parties allegedly agreed to produce any photographs Mr. Middleton took during a January 25, 2025 inspection. Rec. Doc. 77. At oral argument, however—after the Court noted that the exhibit Madden relies on did not indicate a mutual agreement to share materials—Madden conceded that the parties did not have any formal agreement to share information obtained during any inspection, but rather that it was customary litigation practice to share photographs taken by experts at an inspection.

Law and Analysis

I.    *Discovery Scope and Limits.*

Discovery may be obtained from non-parties pursuant to Rule 45 of the Federal Rules of Civil Procedure. A non-party served with a subpoena duces tecum may object by sending written objections to the issuing party within 14 days of service or before the return date, whichever is earlier. FED. R. CIV. P. 45(d)(2)(B). Additionally, "a party, although not in possession or control of the requested materials and not the person to whom a subpoena is directed," may attack a third-party subpoena if the party "has a personal right or privilege in the subject matter of the subpoena or a sufficient interest in it." *Marquette Transp. Co. Gulf-Island, LLC v. M/V Chembulk Westport*,

No. 13-6216, 2016 WL 659083, at *3 (E.D. La. Feb. 18, 2016) (citing *Brown v. Braddick*, 595 F.2d 961, 967 (5th Cir. 1979)). Thereafter, and upon timely motion, a court may quash or modify a subpoena if the subpoena: "(i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c); (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden." FED. R. CIV. P. 45(d)(3).

Further, although governed in the first instance by Rule 45, non-party subpoenas are also subject to the parameters of Rule 26. *La. Corral Mgmt., LLC v. Axis Surplus Ins. Co.*, 650 F. Supp. 3d 491, 499 (E.D. La. Jan. 11, 2023); *Hahn v. Hunt*, No. 15-2867, 2016 WL 1587405, at *2 (E.D. La. Apr. 20, 2016) ("Both Rules 45 and 26 authorize the court to modify a subpoena duces tecum when its scope exceeds the boundaries of permissible discovery or otherwise violates the parameters of Rule 45.") (citing FED. R. CIV. P. 45(d)(3); 26(c)(1)(D)). Under Rule 26, a court may, upon finding good cause, issue a protective order to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." FED. R. CIV. P. 26(c)(1). Relevant here, Rule 26 specifically protects facts and opinions known and held by a non-testifying expert and requires an even greater showing of "exceptional circumstances" in order for such materials to be subject to discovery:

> (D) ***Expert Employed Only for Trial Preparation***. Ordinarily, a party may not, by interrogatories or deposition, discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial. But a party may do so only:
>
> (i) as provided in Rule 35(b); or
>
> (ii) on showing exceptional circumstances under which it is impracticable for the party to obtain facts or opinions on the same subject by other means.

5

FED. R. CIV. P. 26(b)(4)(D).[2] Consulting experts' files and materials also are generally protected work product under Rule 26(b)(3). *See Galley v. ZOLL Med. Corp.*, No. 18-223, 2019 WL 13193899, at *3 (N.D. Tex. May 21, 2019).

    II.    *Mr. Middleton's materials should not be disclosed.*

Madden cannot meet the heavy burden to demonstrate that disclosure of Mr. Middleton's materials is proper here. Madden seeks information from an individual who the HilBilt Defendants have now designated as a non-testifying expert witness. There appears to be no question that Mr. Middleton now qualifies as an expert that was retained or specifically employed in preparation for trial and who is not expected to be called as a witness at trial. Madden contends, however, that the expert may be subject to discovery because he investigated the relevant dump bodies in a related case prior to his retention by the HilBilt Defendants in this matter. Rec. Doc. 77 at pp. 1-2. Yet, Madden requests documents from Middleton's "entire file relating to <u>this</u> action," and several other documents related to "<u>this</u> matter." *See, e.g.*, Rec. Doc. 62-5 at pp. 7-8, Nos. 1, 3, 4, 5 (requesting Middleton's "entire file relating to this action" and certain documents "in this matter"). Clearly then, as written, the requests to Middleton certainly request information that was prepared in anticipation of this litigation—at least in part.

---

[2] The burden of establishing exceptional circumstances "is a heavy one," in which the "movant must establish the inability to obtain equivalent information from other sources." *Hebert v. ENI Petroleum Co., Inc.*, No. 23-546, 2024 WL 4564767, at *3 (E.D. La. Oct. 23, 2024). Courts have cited four bases for limiting discovery of non-testifying experts' information:
>  (1) counsel have an interest in obtaining advice to properly evaluate and present their clients' positions without fear that every consultation with an expert might "yield grist for the adversary's mill;" (2) it is unfair to permit a party to benefit from the effort and expense incurred by the other in preparing its case; (3) it is possible that compelling the experts' testimony may result in a chilling effect on the willingness of experts to serve as consultants, and may, in fact, be unfair to the experts; and (4) allowing one party to call an expert previously retained or consulted by the other side creates a risk of substantial prejudice derived from the fact of the prior retention, apart from the substance of the testimony.

*Id.* at *2 (E.D. La. Oct. 23, 2024) (citations omitted).

6

But regardless of whether the materials are from this litigation or previous litigation, Madden has not demonstrated any exceptional circumstances that would warrant disclosure of any of Mr. Middleton's materials. One of the key inquiries to determine whether disclosure of a non-testifying expert witness's materials is appropriate is to determine if the party seeking the discovery can obtain the facts or opinions on the same subject by other means. The circumstances present here indicate that Madden can, and indeed did. As the HilBilt Defendants aptly point out, Madden "had control of the equipment during all times that Mr. Middleton inspected the equipment," and Madden had "continuous and unfettered access to this equipment." Rec. Doc. 62-1 at p. 7. Madden offers no rebuttal to this point and conceded at oral argument that the trucks were in Madden's possession at all relevant times, including during the December 2023 inspection. Thus, Madden has not demonstrated the requisite exceptional circumstances that would warrant disclosure here.

Moreover, and to be sure, Mr. Middleton's role in both this and previous, related litigation provides *further* support for protection of all of his materials. Although not addressed by the parties in their briefings, the Court points out that the work product doctrine is highly applicable here considering Mr. Middleton's repeated role as an expert for Travelers—particularly now that Travelers is a party to this litigation. Rec. Doc. 106; *see In re Grand Jury Proceedings*, 43 F.3d 966, 971 (5th Cir. 1994) (recognizing that there is not "a temporal scope for the privilege."); *S. Scrap Material Co. v. Fleming*, No. 01-2554, 2003 WL 21474516, at *6 (E.D. La. June 18, 2003) ("Work product immunity extends to documents prepared in anticipation of prior, terminated litigation, regardless of the interconnectedness of the issues and facts. The work product privilege recognized in *Hickman, supra*, does not evaporate when the litigation for which the document was prepared has ended."). The Court notes that at oral argument, when asked why the photographs

7

produced by other attendees at the inspection were not sufficient, Madden's counsel tellingly responded that he needed Mr. Middleton's photographs so that he could "see what [Mr. Middleton] was focused on" and "what [Mr. Middleton] was looking at." It is precisely this type of intrusive discovery that the work product doctrine seeks to safeguard against.

The Court therefore finds that Mr. Middleton and his work product are protected from discovery.

## Conclusion

For the foregoing reasons, the Motion to Quash for a Protective Order (Rec. Doc. 62) filed by Defendants Hilark Industries, Inc., HilBilt Sales Corp., Hill G3 Industries, Inc., and Grayling V. Hill ("HilBilt Defendants") is GRANTED. Plaintiff Madden Gulf Coast LLC is not entitled to any discovery from the HilBilt Defendants' non-testifying expert, James I. Middleton, Jr.

New Orleans, Louisiana, this 16th day of April, 2025.

*Janis van Meerveld*
Janis van Meerveld
United States Magistrate Judge